# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# CLEVELAND DIVISION

| | |
|---|---|
| SHAWN WHIPPLE, Individually and For Others Similarly Situated,<br><br>v.<br><br>CLEVELAND INTEGRITY SERVICES, INC., | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>FLSA COLLECTIVE ACTION CLASS<br><br>RULE 23 CLASS ACTION |

## ORIGINAL COMPLAINT

### SUMMARY

1. Plaintiff Shawn Whipple ("Whipple") brings this lawsuit to recover unpaid overtime wages and other damages from Cleveland Integrity Services, Inc. ("CIS") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.01, 4111.03 and 4111.10., ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA") Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts").

2. Whipple and other similarly situated employees were paid the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek.

3. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because CIS maintains its corporate headquarters in Cleveland and a significant portion of the facts giving rise to this lawsuit occurred in this District. Whipple worked for CIS in this District.

## THE PARTIES

6. Whipple worked for CIS from March 2018 until August 2018 as an inspector.

7. Throughout his employment with CIS, Whipple was paid a day-rate with no overtime compensation.

8. Whipple's consent to be a party plaintiff is attached as Exhibit A.

9. Whipple brings this action on behalf of himself and all other similarly situated workers who were paid by CIS' day-rate system. CIS paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

10. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors employed by Cleveland Integrity Services, Inc. who were paid a day rate in the past three (3) years.** ("Putative Class Members").

11. The members of the FLSA Class are easily ascertainable from CIS's business and personnel records.

12. Whipple also seeks class certification of such a class under FED. R. CIV. P. 23, under the Ohio Wage Acts.

13. Cleveland Integrity Services, Inc. is a corporation and may be served with process by serving its registered agent National Registered Agents Inc., 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

14. At all times hereinafter mentioned, CIS was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all times hereinafter mentioned, CIS was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all times hereinafter mentioned, CIS was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17. At all times hereinafter mentioned, Whipple and the Class Members (as defined below) were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

18. CIS provides pipeline inspection and construction management services throughout the United States, including Ohio. To complete their business objectives, CIS hires personnel (like Whipple) to perform work.

19. Many of these individuals worked for CIS on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

20. CIS paid the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

21. For example, Whipple worked for CIS from March 2018 until August of 2019 as a Welding Inspector. Throughout his employment with CIS, he was paid on a day-rate basis.

22. Whipple normally worked 10 to 12 hours a day.

23. Whipple would work 6 days a week.

24. Whipple was never guaranteed a salary when he worked for CIS.

25. Whipple was required to report the days worked to CIS, not the hours he worked.

26. The work Whipple performed was an essential and integral part of CIS's core business.

27. During Whipple's employment with CIS, it and/or the company CIS contracted with exercised control over all aspects of his job.

28. CIS and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Whipple.

29. Even though Whipple often worked away from CIS's offices, CIS still controlled all aspects of Whipple's job activities by enforcing mandatory compliance with CIS's and/or its client's policies and procedures.

30. CIS directly determined Whipple's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for CIS.

31. Very little skill, training, or initiative was required of Whipple to perform his job duties.

32. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by CIS and/or its clients. Virtually every job function was pre-determined by CIS and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

33. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

34. Whipple and the Putative Class Members did not have any supervisory or management duties.

4

35. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

36. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

37. CIS's policy of failing to pay its employees, including Whipple, overtime violates the FLSA and the Ohio Wage Laws because these workers are performing non-exempt job duties.

38. It is undisputed that Whipple and the Putative Class Members are operating oilfield machinery, performing manual labor, and working long hours out in the field.

39. CIS's day-rate system violates the FLSA and the Ohio Wage Laws because Whipple and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

40. By failing to pay Whipple and those similarly situated to him overtime at one-and-one-half times their regular rates, CIS violated the FLSA's overtime provisions.

41. CIS owes Whipple and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

42. Because CIS knew, or showed reckless disregard for whether, its pay practices violated the FLSA, CIS owes these wages for at least the past three years.

43. CIS is liable to Whipple and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

44. Whipple and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## OHIO WAGE ACT VIOLATIONS

45. Whipple brings this claim under the Ohio Wage Act as a Rule 23 class action.

46. The conduct alleged violates the Ohio Wage Act (O.R.C. §§ 4111.01, 4111.03, and 4111.10).

47. At all relevant times, CIS was subjected to the requirements of the Ohio Wage Act.

48. At all relevant times, CIS employed Whipple and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

49. The Ohio Wage Act requires employers like CIS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Whipple and each member of the Ohio Wage Act Class are entitled to overtime pay under the Ohio Wage Acts.

50. CIS had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

51. Whipple and each member of the Ohio Wage Act Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

52. Whipple and each member of the Ohio Wage Act Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by CIS, as provided by the Ohio Wage Act Class Action Allegations

53. Whipple incorporates all previous paragraphs and alleges that the illegal pay practices CIS imposed on Whipple were likewise imposed on the Putative Class Members.

54. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the Ohio Wage Acts.

55. Numerous other individuals who worked with Whipple indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

56. Based on his experiences and tenure with CIS, Whipple is aware that CIS's illegal practices were imposed on the Putative Class Members.

57. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

58. CIS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

59. Whipple's experiences are therefore typical of the experiences of the Putative Class Members.

60. The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

61. Whipple has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Whipple has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

62. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

63. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and CIS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

64. Furthermore, even if some of the Putative Class Members could afford individual litigation against CIS, it would be unduly burdensome to the judicial system.

65. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

66. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Putative Class Members' FLSA rights were violated as a result of CIS's straight time for overtime policy.;

   b. Whether CIS's straight time for overtime pay practice was made in good faith;

   c. Whether CIS's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether CIS's violation of the FLSA and the Ohio Wage Acts was willful; and

   e. Whether CIS's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

67. Whipple's claims are typical of the claims of the Putative Class Members. Whipple and the Putative Class Members sustained damages arising out of CIS's illegal and uniform employment policy.

68. Whipple knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

69. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## PRAYER

70. WHEREFORE, Whipple prays for judgment against CIS as follows:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order pursuant to Section 16(b) of the FLSA finding CIS liable for unpaid back wages due to Whipple and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

d. For an Order appointing Whipple and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f. For an Order granting such other and further relief as may be necessary and appropriate.

Dated: August 5, 2019

Respectfully submitted,

By:    /s/ *Michael A. Josephson*
Michael A. Josephson
State Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
State Bar No. 24078444
adunlap@mybackwages.com
William R. Liles
State Bar No. 24083395
wliles@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**AND**

/s/ *Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Jessica R. Doogan (OH Bar No. 0092105)
**BARKAN MEIZLISH DEROSE**
**WENTZ MCINERNEY PEIFER, LLP**
250 E. Broad Street, 10th Floor
Columbus, OH 43215
614-221-4221 – Telephone
614-744-2300 – Facsimile
bderose@barkanmeizlish.com
jdoogan@barkanmeizlish.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**